## LOUIS REINHARDT V. STATE OF NEBRASKA.

FILED OCTOBER 2, 1917. No. 20124.

1. **Adultery:** PROOF. Adultery, like any other fact, may be established by circumstantial evidence.

2. ———: EVIDENCE. The evidence examined, discussed in the opinion, and *held* that the testimony of the complaining witness is corroborated by competent testimony with respect to the commission of the offense charged against defendant.

3. **Criminal Law:** VERDICT: REVIEW. "It is the province of the jury to determine disputed matters of fact in criminal as well as in civil cases. The verdict will not be set aside in this court upon proceedings in error for want of evidence to support it, unless it is clearly wrong." *Henry v. State*, 72 Neb. 252.

4. ———: ADULTERY: INSTRUCTION. In a prosecution for adultery, the court of its own motion gave an instruction to the jury that is set out and discussed in the opinion. *Held*, that the instruction so given was, under the circumstances of this case, without prejudice to the defendant.

ERROR to the district court for Cedar county: GUY T. GRAVES, JUDGE. *Affirmed.*

*R. J. Millard,* for plaintiff in error.

*Willis E. Reed, Attorney General,* and *Alfred C. Munger, contra.*

DEAN, J.

The defendant, who is a married man, was convicted in the district court for Cedar county of committing adultery with Minnie Lee, an unmarried woman, aged eighteen, and sentenced to a term of three months in the county jail. He has brought the case here for review.

The defendant is a farmer residing on a farm with his wife and two children. The woman with whom the defendant is charged with having had adulterous relations is his wife's sister. Miss Lee came to the Reinhardt home on August 1, 1915, and with a few interruptions this seems to

have been her home for most of the time from that date until June 13, 1916, when she returned to the home of her step-father living in the same county. Two days thereafter she was there delivered of a babe, fully developed. She maintains that defendant is the father of her child. He stoutly denies its paternity. While she was at the Reinhardt home she assisted in the housework, did chores, helped defendant with the milking, and apparently helped generally in the work about the premises.

Prosecutrix testified that defendant had sexual intercourse with her, the first time, on September 4, 1915, and two or three times thereafter in the same month, the last time being on the 26th, and that all of the illicit acts complained of were committed in defendant's home and while his wife was away getting family supplies at their trading town or visiting among the neighbors. She says that he accomplished his purpose by overpersuasion and always against her will. In October, 1915, she began to suspect pregnancy, and upon telling defendant about her probable condition she testified that he told her "not to worry, he would get rid of it for me." She testified that about two days before her child was born she talked with defendant about her unfortunate condition when they were alone in his home, and that he then told her the name and address of a maternity hospital in Omaha, telling her that it was the place for her to go, and that when she told him she could not remember the name nor the address of the institution, he wrote it on a slip of paper and gave it to her. This paper in defendant's handwriting containing the address of the hospital is in evidence. On the same day and at the same time she said that he gave to her $12 to pay the expenses of the trip. She said she had a small sum of money in a bank in his name at the time, but this was not mentioned, and she understood that the money he gave her was his own. It is in evidence that Miss Lee concealed her condition from her mother until very shortly before the birth of her babe. Her mother testified that when her daughter told her that she expected to become a mother, she also

told her that a Coleridge man was the father of the child, and that she afterwards said that the defendant "told her to tell that, and not tell on him because it was a penitentiary act." It seems that she talked with no one except defendant about her condition until within a few days of the birth of the child. The complainant's stepfather testified that she and the defendant, for a period of about 10 days in the early part of September, 1915, while he was at the Reinhardt home, were frequently alone together, and that no other man was there during his stay in that month. The prosecutrix testified that she never had sexual relations with any other man than the defendant, and that she kept company with no other man during September.

The defendant denied ever having had sexual intercourse with the complaining witness, and also practically all of the material testimony offered by her. The question whether Miss Lee was at the Reinhardt home during the month of September, as she testified, is material in view of other facts in the case. On this point defendant and his wife both testified that in September she was at Coleridge for a few days, and at Hartington about fair time for perhaps a week, and that once or twice she was away from home over night at the home of some of the neighbors, one of whom the defendant named. This testimony is important if true, and if true it seems that it would have been corroborated by the testimony of disinterested witnesses who saw her when she was away from defendant's home. With the exception of one man who testified to seeing her at the fair in his automobile and seated by the side of his own daughter, no corroboration appears, and we conclude the jury must have disbelieved the testimony of both the defendant and his wife on this point. Besides, Miss 'Lee not only testified that she was at the Reinhardt home continuously in September, but she testified that she did not know the owner of the automobile, and denied the automobile incident altogether. Mrs. Reinhardt alone testified that there were one or more hired men who worked on the place in September, and that one of them, a 19-year old

boy, was there for a part of the time overnight. But no significance can attach to this circumstance, because it is not even attempted to be shown that the prosecuting witness even spoke to these men, much less that she was on terms of criminal intimacy with them. Apparently the jury believed from the testimony that defendant was the only man on the Reinhardt premises with whom Miss Lee was familiarly intimate during September, 1915; so that if the babe that was born to her on June 15, 1916, was begotten in September, 1915, the jury were justified in concluding that defendant was its parent, and to this extent the date of its birth is corroborative of her testimony that she had sexual intercourse with defendant in that month.

It is obvious that testimony as to the date of birth of the child might be admissible as corroboration in proof of adultery under some circumstances, and that such testimony would not perhaps be admissible under others. On this point we believe that an inflexible rule cannot be established that is equally applicable in all cases. The testimony appears to have been fairly presented, and the jury as triers of disputed questions of fact having determined the controversy, we are not disposed to disturb their verdict. It is disclosed that the testimony of the prosecuting witness was sufficiently corroborated, and we find no sufficient reason for setting aside the verdict of the jury.

Defendant complains of instruction No. 5, given by the court of its own motion. The instruction follows: "The question as to who is the father of the child born to Minnie Lee on June 15th, 1916, is immaterial except as the date of the birth corroborates the witness as to day of carnal knowledge charged in the information. And the fact, if it be a fact, that the father of said child is some other person than the defendant, would not relieve the defendant of the charge alleged in the information, if the jury believes beyond a reasonable doubt that defendant is guilty of adultery as charged in the information beyond a reasonable doubt as explained in these instructions."

In oral argument counsel for defendant admitted that "the instruction is correct as an abstract proposition of law," but he argues in his brief that the instruction as given has "a tendency to inject a false issue into the case. The question at issue was not as to who is the father of a particular child. It is not a bastardy case. The instruction would seem to indicate that we were trying to establish the parentage of the child as a defense. This was misleading and prejudicial." In oral argument, also, he cited *Commonwealth v. O'Connor,* 107 Mass. 219, a case where the defendant was charged with committing adultery with an unmarried woman. It was there held that evidence is inadmissible that the complainant "was delivered of a child which might have been begotten about the time of the offense charged." But in the *O'Connor* case only a few of the attendant facts are discussed, so that we are unable to say that the rule there announced should be accepted as an expression of substantive law that is properly applicable to the case before us. *Clark v. State,* 170 Ala. 101, holds to a rule directly contrary, where the same question was involved. We cannot adopt defendant's theory with respect to the instruction complained of. Its language is not susceptible of strained construction, and we do not see how it could have misled the jury. Under the circumstances presented by the record before us, we are unable to say that it was prejudicial to the defendant.

Discovering no reversible error in the record, the judgment of the trial court is

AFFIRMED.